### NEWALD v. VALLEY FARMING COMPANY.

#### Opinion delivered March 25, 1918.

1. APPEALS—MUST BE TAKEN WHEN.—Appeals must be taken from judgments or decrees within six months from the date of their rendition.

2. APPEALS—MAY BE TAKEN, WHEN—FORECLOSURE.—An appeal may be taken from a decree of foreclosure and sale when the rights of the parties have all been settled and nothing remains to be done by the court but to make the sale and pay out the proceeds.

3. JUDGMENTS—FORECLOSURE DECREE—FINALITY—TIME OF APPEAL.—A decree finding that plaintiff's mortgage was a lien upon certain property, that the whole indebtedness was due, and a certain sum due plaintiff, judgment was rendered in plaintiff's favor, and the sale of the property directed. *Held,* the decree was final, and an appeal therefrom must be taken within six months, and this is not affected by the reservation of certain taxes claimed to have been paid by plaintiff, nor by the fact that they were later allowed and added to the decree and a second order of sale made.

4. MORTGAGES—FORECLOSURE.—A mortgage was executed upon certain land containing a provision for the release from the mortgage of parts thereof in a certain manner. This provision was superseded by a stipulation agreed to by the parties and entered of record. *Held,* purchasers from the mortgagor with knowledge of the facts were not entitled to releases under the provision in the original mortgage.

Appeal from Clay Chancery Court, Western District; *Chas. D. Frierson,* Chancellor; affirmed.

*J. F. Gautney* and *F. G. Taylor,* for appellants.

1. Appellants have the right to pay their *pro rata* per acre of the mortgage and have their lands released. 127 Ark. 577; 141 U. S. 247; 41 Minn. 14; 27 Cyc. 1415-16;

20 A. & E. Enc. L. 1070 and notes; 57 N. J. Eq. 539. This right to release may be exercised at any time before final decree. 41 Atl. 405; 41 Minn. 14; 63 N. W. 1012; 103 Iowa 301; 72 N. W. 531; 57 N. J. Eq. 539; 162 Ill. 426. It was not necessary to make a tender. 70 Ore.; 142 Pa. 321.

The stipulation entered into was only an extension of time of payment. 103 Ark. 484.

2. The court erred in rescinding the contracts of sale to appellants. There was no offer to put parties *in statu quo.* 25 Ark. 196; 59 *Id.* 251. The parties seeking rescission had full notice of the sales. 119 Mich. 343; 42 Neb. 87; 60 N. W. 391. The lands that Dorough-Newald Co. conveyed were conveyed after the contracts of sale were made and previous to the time of performance and there were no grounds of rescission. 29 A. & E. Enc. L. 667.

There was no evidence to sustain the decree in favor of John and Mary Gancell. The land sold the Blanars was not sold to Taylor or Morgan. As to the right to deduct the value of land lost by reason of the conveyance to Terry, see 47 Ark. 293.

3. The parties seeking rescission have no rights under the release provision of the mortgage even if they had a right to rescind.

4. The amount of the judgment is excessive.

*D. Hopson, T. J. Crowder* and *G. B. Oliver,* for appellee, Valley Farming Co.

1. The decree should be affirmed for non-compliance with Rule 9.

2. Appellee was not bound by the clause as to the release on payment of *pro rata* amount per acre. This was inserted without the knowledge or consent of appellee. Newald failed to pay the taxes and permitted the land to be sold, but received large rents. He made no improvements. He continued to sell lands after the suit to foreclose was commenced. His claim for damages is unfounded and without merit. He was not damaged.

As to the consideration for the deeds made see 13 Cyc. 613 (II).

The claims of the interveners are without merit. The conveyances were not in good faith. No tender was made.

3. Under the provision for release appellants have no rights. Par. 6 of the stipulation entirely supersedes this insertion made without authority. Appellants have never complied with their undertakings. Terry, Taylor and Morgan were not innocent purchasers. Their claims to release are without merit.

4. After suit to foreclose is begun the right to release ceases except on payment of the full debt. 92 N. Rep. 474; 84 Am. Dec. 726; 43 Fed. 552; 152 N. Y. Supp. 87; 36 N. J. Eq. 69. See also Jones on Mortg. (5th ed.) § 981, p. 987.

5. No payment nor tender was made under the stipulation.

*G. B. Oliver,* for the other appellees.

1. The action of Dorough-Newald Co. in selling and conveying the land to interveners without any reference to previous conveyances to appellees and the delivery of possession by said company to them amounts to a rescission, or rather the acceptance of the offer to rescind made in the complaint. Black on Rescission and Cancellation, etc., § § 526, 528; *Ib.* 534; 39 Cyc. 1356, c. 1357.

2. Appellees tendered back a deed and offered to reconvey before suit. Black on Rescission and Cancellation, etc., § 630.

3. Appellees are entitled to rescission and a lien. The decree is right.

*T. J. Crowder, D. Hopson* and *G. B. Oliver,* for appellee, supplemental brief.

1. The decree of January 20, 1916, was final and the transcript was not lodged within six months.

2. The decree is not excessive. If any error was made, it was a misprision of the clerk and can be corrected.

STATEMENT OF FACTS.

This was a suit in equity to foreclose a mortgage on real estate. Certain persons who had purchased tracts of land after the execution of the mortgage were allowed to become parties and asked that their contracts for the purchase of the lands be set aside on account of fraud practiced upon them by the mortgagors. Still other persons who had purchased some of the lands from the mortgagors since the execution of the mortgage were allowed to intervene for the purpose of asserting their rights to have the lands purchased by them released from the mortgage by the payment of certain sums.

On the 31st day of March, 1914, the plaintiff, Valley Farming Company, conveyed to the defendant, L. J. Newald, a large tract of land in the western district of Clay County, Arkansas, consisting of something over 8,000 acres; about five hundred acres of which were cleared and in cultivation. The consideration was $85,000, evidenced by the promissory notes of L. J. Newald and S. E. Newald, his wife. Of these notes one was for $5,000, due six months after date; four were for $15,000, each due respectively twelve, eighteen, twenty-four and thirty months after date and the remaining note was for $20,000, due thirty-six months after date. The notes bore the date of March 31, 1914, and on that date L. J. Newald and S. E. Newald executed a mortgage to the Valley Farming Company on the lands to secure the payment of these notes. Said mortgage contains the following provision:

"It being expressly agreed by and between the Valley Farming Company and L. J. and S. E. Newald, or assigns, that upon paying the *pro rata* amount per acre of this mortgage any part or parcel of the land covered by said mortgage shall be released."

According to the contention of the plaintiff the draft of the mortgage submitted to its officers did not contain this provision and evidence was introduced tending to

show that the provision was inserted in the mortgage without the knowledge and consent of the plaintiff and was not discovered until after the mortgage was filed and recorded. The plaintiff at once caused the following notice to be entered on the margin of the record where said mortgage was recorded:

"Notice is hereby given that the clause contained in this mortgage providing for the release of the portion of the lands therein conveyed upon the payment of the *pro rata* amount per acre of the indebtedness was inserted without his knowledge or the authority of the undersigned, and that no such release will be given unless satisfactory consideration is paid and arrangement hereinafter made. This 30th day of April, 1914.

(Signed)           "Valley Farming Company.
                   "By J. M. Hoffman, President."

The original bill of foreclosure in this case was filed on the 23d day of November, 1914. The question of whether or not the release above referred to was contained in the mortgage and was placed there without the consent of the mortgagee was made an issue by the answer tendered by the mortgagors. Evidence was introduced by the mortgagee to show that the release was placed there without its knowledge and consent and by the mortgagors to show that it was placed in the mortgage by the agreement of the parties. On the 8th day of October, 1915, at the October term of the chancery court the following order was entered of record: .

"On this October 8, 1915, comes the plaintiff by their attorneys, T. J. Crowder and D. Hopson, and the defendants, Dorough-Newald Company, L. J. Newald and S. E. Newald, by their attorneys, Ben M. Goldberg, C. W. Terry and F. G. Taylor, and submitted to the court for its approval their agreement and adjustment of all controversies herein involved as follows:

"It is stipulated and agreed that all matters in this controversy be settled on the following basis:

"First. The marginal notice heretofore caused to be placed on the record of the mortgage herein sought to be foreclosed shall be ordered canceled and expunged from the record.

"Second. The defendant shall pay or cause to be paid on or before ninety days from this date one-half of the amount due for and on account of the notes past due, and interest on the remaining notes secured by said mortgage, including the amount heretofore paid by plaintiffs for the drainage taxes on said land in the sum of $1,898.60, together with interest on the said last mentioned sum at the rate of 6 per cent. per annum from the first day of December, 1914, and further agrees to pay the remaining one-half of the said amount in 180 days from this date. Said amounts shall bear interest at the rate of 6 per cent. from this date until paid.

"Fourth. It is agreed that in figuring interest on the notes now due, that the same is to be figured at straight simple interest from date of said notes to the present date, at the rate of 6 per cent. per annum. That the interest afterwards shall be computed according to the terms and conditions of the notes.

"Fifth. That the defendant shall be allowed in full for all its claim for damages the sum of $7,500, same to be credited of this date. The said allowance is to be made and credited upon the $15,000 note secured by the mortgage in controversy herein, which matures on the 31st day of March, 1916, the payment of which is extended until the 30th day of June, 1916. That said credit of $7,500 is to be credited upon said note heretofore described, when and not until the balance of the $15,000 note, with interest, is paid. The said credit, however, is not to be allowed unless the amount of said note is paid on or before the 30th day of June, 1916.

"Sixth. The plaintiff shall release all lands heretofore sold, except the lands sold to Seigel, on payment of $17.50 per acre, the first sixteen tracts described in the defendant's exhibit 8 to be released when and during the

payment of the said sum first before mentioned to be paid as per paragraph No. 3, and the remaining tracts shown in defendant's exhibit 8 to be released when and during the payment of the second one-half for said lands shown in defendants' exhibit 8, provided if defendant desires to make partial payments on either of said sums, it may do so, and have the land released at the rate of $17.50 per acre of the amount paid.

"Seventh. All lands sold hereafter and not mentioned in defendants' exhibit 8 are to be released upon the payment of the *pro rata* amount per acre as per the terms of the original mortgage herein as the same was originally recorded, said payment to be credited on first notes coming due after the sale is made.

"Eighth. That upon the payment of the amounts herein provided to be paid as per clause No. 2 and No. 3, above, an order shall be entered dismissing plaintiff's bill and each party to pay its own costs.

"Ninth. That in the event said defendant fails to make payment of either of the payments at the time and in the manner as provided herein for the payments mentioned in clause No. 3, a decree of foreclosure in vacation may be rendered. Defendant's counter-claim to be dismissed.

"Tenth. It is further stipulated between the parties that the plaintiffs shall cause to be brought to remove clouds from the title of the lands included in their conveyance to the defendants and confirm the title to said lands so as to stand for trial at the next term of the chancery court, at plaintiff's expense."

The cause was then continued for the performance of the conditions mentioned in the stipulation. On the 5th day of January, 1916, L. J. Newald met with Judge F. G. Taylor and C. W. Terry, his attorneys, at Corning, Arkansas. Mr. Newald then decided that he was unable to comply with the provisions in the stipulation above referred to. C. W. Terry purchased 1,407 acres of the mortgaged lands from Dorough-Newald Company, a cor-

poration which had been organized to purchase the lands from L. J. Newald. All the stock in this corporation except one share was owned by L. J. Newald and the corporation did not pay him anything for the lands. It was the intention of the parties that the lands should be sold in small parcels to different persons in order to pay the purchase money thereof to the plaintiff. Terry made a tender according to the release provision as originally written in the mortgage, and demanded that the mortgage be released as to the lands purchased by him. The plaintiff refused his tender and demanded payment according to the stipulation entered of record on October 8, 1915, before it would release the land sold to him by the mortgagors. The mortgagors had not complied with the terms of that stipulation and no offer of tender under its provision was made to the plaintiff. On the 20th day of January, 1916, by consent the bill for foreclosure of the mortgage on the land came on before the chancellor for hearing. On the same day Judge F. G. Taylor and Morgan filed a petition alleging that he had purchased a portion of the lands included in the mortgage sought to be foreclosed and was allowed to become a party defendant to the action. C. W. Terry had already been allowed to file a similar intervention. Taylor, Terry and Morgan in their petitions claimed the right to have the lands purchased by them released from the mortgage upon the payment by them of the sums provided for in the release provision as contained in the mortgage.

The court entered a decree of foreclosure in favor of the plaintiff, Valley Farming Company, against the defendants, L. J. and S. E. Newald and and the Dorough-Newald Company.

Judgment was rendered in favor of the plaintiff against these defendants for the sum of $93,139.36. The cross-bill of the defendants against the plaintiff, in which, damages were claimed on account of a breach of the stipulation of the release agreement contained in the mortgage, was dismissed. It was decreed that plaintiff's

mortgage lien on all the lands described in the mortgage be foreclosed and that the right of redemption of the said L. J. Newald, S. E. Newald and Dorough-Newald Company be barred and foreclosed and the right of homestead and dower of the said S. E. Newald be barred and foreclosed. It was further decreed that, if the sum of money adjudged to be due the plaintiff by the defendants be not paid within thirty days, that the lands embraced in the mortgage be sold at public auction as provided in the decree.

It was further decreed that the commissioner appointed to sell the lands should first offer the lands which did not appear from the record to have been sold or contracted by L. J. Newald or the Dorough-Newald Company to third persons and that if such unsold lands did not bring sufficient money to satisfy the plaintiff's judgment, then the lands sold and contracted by said defendants should also be sold. The stipulation of October 8, 1915, was recited in the decree and the court found that the defendants had failed to pay the taxes and make the other payments in compliance with the third clause of the stipulation and had failed in every respect to comply with the stipulation.

The court also found that the tender made by C. W. Terry was not a compliance made with clause 3 of said stipulation. The court also reserved from adjudication the rights of certain persons to a rescission of their contracts for the purchase of certain parcels of land from the mortgagors. The rights and interests of F. G. Taylor and C. W. Terry and the amount of ditch taxes claimed by the plaintiffs for the year 1915 were also reserved from the decree. The principal part of the consideration paid by Terry and Taylor for the parcels of the lands sold to them was attorneys' fees owed them by the mortgagors and also the assumption by them of the *pro rata* part of the mortgage indebtedness under the terms of the release contained in the mortgage. Terry made his tender of the amount which he claimed to be due

under the mortgage for a release of his lands before the decree of January 20, 1916, was entered of record. Taylor and Morgan made a tender after that time. All of them, however, in making the tender relied upon the release provision in the original mortgage and not upon the release provision as contained in the stipulation entered of record on the 8th day of October, 1915.

On March 17, 1917, the chancery court entered the decree which has been appealed from in this case. The court found that the conveyances to C. W. Terry, F. G. Taylor and S. R. Morgan were made after the foreclosure proceedings had been instituted; that each of them knew at the time his respective conveyance was made that the Dorough-Newald Company could not and would not comply with the original contract or with the stipulation between the parties approved by the court and that said lands were wholly subject to the payment of the judgment of the plaintiff.

The court further found that the defendants, L. J. Newald and S. E. Newald and the Dorough-Newald Company, failed to perform the stipulations on their part. The court also found that certain persons purchased tracts of the mortgaged lands before the foreclosure suit was commenced and that these parties were entitled at the time of making such purchase to have the respective tracts of land purchased by them released from the mortgage upon the payment of the *pro rata* part as provided in the release provision contained in the mortgage.

The court further found that the sales to certain parcels of said land were procured by misrepresentation on the part of the mortgagors and rescission as to these tracts was allowed in the decree.

The court further found that the *pro rata* payment required to be made for the release of lands under the mortgage has not been paid in any instance and that the plaintiff's mortgage is in force on the several tracts of land sold.

The court further found that on December 1, 1915, the plaintiff paid the sum of $2,345.90 ditch taxes on the lands for the year 1915, and that on December 1, 1916, the plaintiffs paid $3,714.60 ditch taxes on said lands and that in May, 1917, plaintiff redeemed certain of said lands from tax sale by the payment of $1,768.33. The decree refers to the decree of January 20, 1916, and recites that judgment was there rendered in favor of the plaintiff against the defendants in the sum of $93,139.36, being the amount of the notes sued on and the ditch tax paid by the plaintiff in the year 1914 and that the right of redemption of the defendants was foreclosed and barred and the property was ordered sold and that the cause was continued as to the issues raised by certain persons who had purchased certain parcels of the lands from the mortgagors. The decree also contains a clause barring the right of redemption of L. J. Newald, S. E. Newald and the Dorough-Newald Company, and provides for the sale of the lands at public auction under the directions provided in the decree.

On the 21st of November, 1917, the clerk of this court granted an appeal in this case to the defendants, L. J. Newald, S. E. Newald and Dorough-Newald Company and to F. G. Taylor, C. W. Terry and S. R. Morgan, interveners.

HART, J., (after stating the facts). (1) It is first insisted by the plaintiff that the appeal of L. J. and S. E. Newald and the Dorough-Newald Company be dismissed because it was not taken within the time allowed by law. Appeals must be taken from judgments or decrees within six months from the date of their rendition. *Stephens v. Williams,* 122 Ark. 255. It appears from the record that the decree of foreclosure and sale of the mortgaged premises was rendered on January 20, 1916. The appeal was not granted until November 21, 1917. This was more than six months from the date the decree was entered of record. Counsel for the defendants speak of this decree throughout their brief as being an interlocutory decree

but we are of the opinion that it was a final one. In the case of *Davie* v. *Davie,* 52 Ark. 224, the court held (quoting from the syllabus):

(2) "Where a decree determines the right to property, and directs it to be delivered up, or directs its sale, and the plaintiff is entitled to have the decree carried into immediate execution, it is to that extent final and may be appealed from, although a further decree may be necessary to adjust an account between the parties. In such cases the appeal is allowed to prevent irreparable injury pending the suit. It is also allowed from a decree, which, without ending the suit finally, determines a distinct and severable branch of the cause." To the same effect, see *Seitz* v. *Meriwether,* 114 Ark. 289, and cases cited. An appeal may be taken from a decree of foreclosure and sale when the rights of the parties have all been settled and nothing remains to be done by the court but to make the sale and pay out the proceeds. The sale in such a case is the execution of the decree. *Railroad Company* v. *Swasey,* 23 Wall. (U. S.) 405; *Whiting* v. *The Bank of U. S.,* 13 Peters (U. S.) 6; *Central Trust Co.* v. *Grant Locomotive Works,* 135 U. S. 207, and *McGourkey* v. *Toledo & Ohio Central Ry. Co.,* 146 U. S. 536.

In the last mentioned case the court said: "It may be said in general that if the court make a decree fixing the rights and liabilities of the parties, and thereupon refers the case to a master for a ministerial purpose only, and no further proceedings in a court are contemplated, the decree is final; but if it refers the case to him as a subordinate court and for a judicial purpose, as to state an account between the parties, upon which a further decree is to be entered, the decree is not final."

In *Cooper* v. *Ryan,* 73 Ark. 37, the court held a decree foreclosing a mortgage and appointing a commissioner to sell the mortgaged property is a final judgment from which an appeal must be taken.

In Jones on Mortgages (7 ed.), volume 3, paragraph 1600, the author said: "A judgment which settles all

the rights of the parties and directs a sale of the premises, and that the defendant pay any deficiency which may arise after such sale, is a final decree from which an appeal may be taken; though in a limited sense it is interlocutory, inasmuch as further proceedings are necessary to carry it into effect. It leaves nothing further to be adjudicated.''

(3) The decree of January 20, 1916, was complete in itself and required no further judicial action for its execution. It found that the mortgage of the plaintiffs was a lien upon the property described in it; that the whole of the indebtedness was due and payable and that a sum certain was due the plaintiff. Judgment was rendered in favor of the plaintiff for that sum and the sale of the mortgaged premises was directed in the decree. The cross-complaint of the defendants, L. J. and S. E. Newald and the Dorough-Newald Company was dismissed. All of the issues raised by the pleading between the plaintiffs and these defendants were settled except as to whether or not the plaintiffs should be allowed the ditch taxes for 1915, which it had alleged that it had paid. This did not require a judicial accounting between the parties. It is true the issues as to the interventions of Taylor, Terry and Morgan were reserved from the decree but the issues as to them were separate and distinct from the issues raised in the foreclosure proceedings.

And so, too, with regard to the issues raised by the other persons who had purchased tracts of land from the mortgagors after the execution of the mortgage. The decree of foreclosure found the amount of the debt secured by the mortgage and ascertained the property to be sold under it. A commissioner was appointed to take charge of the property and sell it under the directions provided for in the decree. Hence it will be seen that if no other action had been taken after the rendition of the decree of January 20, 1916, the rights of the plaintiff, the mortgagee, and of the defendants, who were the mortgagors, would have been settled. Therefore the decree was final.

The rights of the plaintiff and defendants to the foreclosure suit were settled by the decree of January 20, 1916. The reservation of the ditch taxes claimed to have been paid by the plaintiff did not, under the authorities above cited, make the decree an interlocutory one. Neither did the fact that they were subsequently allowed and added to the amount of the decree of January 20, 1916, and the further fact that a sale of the lands was again ordered, have that effect. The decree of January 20, 1916, remained in force until it was set aside by consent of the parties, or by a valid order of the court. The decree was not even attempted to be set aside; but on the contrary its validity was expressly recognized in the decree of March 17, 1917, and referred to.

(4) Taylor, Terry and Morgan all purchased lands from the mortgagors and made a tender to the mortgagee of the *pro rata* amount, which they claimed released the land they bought from the mortgagee. All of them entered into a contract for the purchase of the lands before January 20, 1916, but only Terry made a tender before that time. They insist that the decree of January 20, 1916, was an interlocutory one, and they rely on the case of the *St. Louis Union Trust Co.* v. *Chicot County Cotton-Alfalfa Farm Co.,* 127 Ark. 577, where it was held that the right to obtain a partial release from a mortgage under a contract conferring it, may be exercised after as well as before default in payment of the mortgage debt. As to the rights and interests of these parties, it does not make any difference whether or not the decree of January 20, 1916, was final or interlocutory, nor do the facts bring them within the rule in the case just cited, for they did not comply with the stipulations between the mortgagee and mortgagors under which they might have obtained a release from the mortgage as to the lands purchased by them by paying a certain proportion of the mortgage indebtedness. They made their tender under the release provision originally contained in the mortgage. This provision was superseded by the agreement made October 8,

1915, and entered of record on that date. Terry and Taylor were attorneys for the defendants and made the stipulation for it. They submitted to the court for its approval their agreement and adjustment of all controversies involved and contained in the stipulation. The court approved their agreement and ordered it entered of record and that the case be continued for the purpose of enabling the parties to comply with it.

It was contended by the plaintiff that the provision for a release contained in the original mortgage was inserted in it without its knowledge and consent after the original draft of the mortgage had been approved by it. On the other hand, it was the contention of the mortgagors that this provision was placed in the mortgage by the express agreement of the parties. Testimony had already been taken by the parties to establish their respective contentions. The stipulation of October 8, 1915, by its express terms settled this controversy between the parties. It had the effect, not only to cancel the notice which the plaintiffs had inserted on the margin of the record on the 30th of April, 1914, but it constituted a new agreement under which the lands might be sold and released from the mortgage. It appears from the record that the stipulation of October 8, 1915, was not complied with in any respect. No attempt was made by Taylor, Terry or Morgan to comply with its provisions. The tender made by each of them was in accordance with the release provision in the mortgage; and, inasmuch as that provision had been superseded by the later agreement, it may be said that it was no tender at all, and for the reason that they failed to comply with the provision in regard to the release contained in the stipulation of October 8, 1915, they were not entitled to have any of the lands purchased by them released from the mortgage.

The conclusion we have reached and the views we have expressed render it unnecessary for us to decide the issues raised in regard to the purchases made by the other persons; for the decision of the court in regard to

their rights and interests concerned only themselves and the plaintiffs, none of whom have prosecuted an appeal from the decree.

The decree of the chancellor in regard to their rights and interests can not affect the defendants, L. J. and S. E. Newald and Dorough-Newald Company, because they did not appeal from the foreclosure decree and they can not be prejudiced by the court setting aside the contracts which they made with these parties. The rights of Taylor, Terry and Morgan can not be affected because, as we have already seen, they failed to make the tender under the stipulation of October 8, 1915, and therefore have no right to have the mortgage released as to the lands purchased by them.

It follows that the decree will be affirmed.

HART, J., (on rehearing).   Counsel for appellants, Terry and Taylor, asked for a rehearing on the ground that they were entitled to redeem in accordance with the terms named in the mortgage.   They base their contention on section 7 of the stipulation filed October 8, 1915.

It will be remembered that section 7 provides, in effect, that all land sold thereafter and not mentioned in defendant's "exhibit 8" are to be released upon the payment of the *pro rata* amount per acre as by the terms of the original mortgage.

We will first take up the claim of Terry.   The whole of the stipulation of October 8, 1915, is to be read and considered together.   Terry did not testify in the case. According to the testimony of another witness, which is not disputed, Terry wanted a release from the mortgage of about 1,407 acres of land under the terms of the original mortgage upon the payment of $10.70 per acre, making a total of $15,054.90.   He demanded that there be deducted from this amount the sum of $7,500 which was conditionally agreed to be allowed the mortgagor as damages.   Section 9 provides that if the mortgagor failed to make the payments provided for in section 3, a decree of foreclosure in vacation might be entered of record and

the counter-claim of the mortgagor be dismissed. The undisputed evidence shows that the payments were not made as required by the stipulation. The tender was made by Terry on January 5, 1916. Therefore, it will be seen that the time for making the payments had expired and the mortgagor was not entitled to be allowed the $7,500 as damages. When this is deducted from the amount tendered by Terry, it is plain that he did not even tender the amount provided for in the mortgage.

In the early part of January, 1916, Newald met his attorneys, Terry and Taylor, and consulted about the foreclosure proceedings. Newald had not complied with the provisions of the stipulation of October 8, 1915, with regard to the payments to be made. He knew that under the stipulation the mortgagee had a right to have the mortgage foreclosed. He informed his attorneys that he was not able to make the payments as required by the stipulation. He then executed the deeds to a part of the lands embraced in the mortgage to Terry and Taylor. The principal part of the consideration was the attorney's fees he owed them. The deeds to Terry and Taylor were executed at a time when the mortgagor had failed to make the payments as provided in the stipulation and at a time when the mortgagee was entitled to a foreclosure of the mortgage. Terry and Taylor, under the circumstances, had no greater rights than the mortgagor and were not entitled to have the lands released at all.

Section 7 provides that all lands sold hereafter and not mentioned in defendant's exhibit 8 are to be released upon the payment of the *pro rata* amount per acre as per the terms of the original mortgage. Exhibit 8 is not in the record and for aught that appears to the contrary the lands purchased by Terry and Taylor may be mentioned in exhibit 8. Every presumption is in favor of the correctness of the decision of the court below, and in order to warrant a reversal, error must affirmatively appear from the record. This has been established by an unbroken line of decisions in this court. Hence it was in-

cumbent upon Terry and Taylor to have seen that exhibit 8 was in the transcript, and not having done so, the presumption is in favor of the correctness of the decree. *Norman* v. *Poole,* 70 Ark. 127; *Hardie* v. *Bissell,* 80 Ark. 74, and *Tatum* v. *Crownover,* 94 Ark. 58.

Applying this rule, it will be presumed that the lands conveyed to Taylor and Terry were a part of those referred to in paragraph 6 as held in our original opinion.

Therefore, the motion for a rehearing will be denied.